| EVER PEREZ, | : | |
|---|---|---|
| **Plaintiff** | : | Civil No. 1:13-CV-1552 |
| | : | |
| v. | : | |
| | : | |
| CORPORAL RICHARD GAMEZ; | : | |
| OFFICER ANDREW CRONE; | : | |
| BRIAN HUNTER; OFFICERS JOHN | : | |
| DOE 1-6; PRESIDENT JUDGE | : | |
| TODD HOOVER; CAROLYN | : | |
| THOMPSON; JUDGE BERNARD | : | |
| COATES, JR.; JUDGE DEBORAH | : | |
| CURCILLO; JASON LAMBRINO; | : | |
| STEVEN MIMM; JOSEPH | : | |
| GAVAZZI; DAUPHIN COUNTY | : | |
| JANE DOES 1-6, | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

# M E M O R A N D U M

In this Section 1983 civil rights action, Plaintiff has sued several individuals asserting violations of his rights protected by the Fourth and Fourteenth Amendments, as well as pendent state law claims. Plaintiff alleges that several police officers, a county sheriff, three judges, a court administrator, three public defenders, and twelve unidentified individuals were the cause of his being incarcerated as the unfortunate result of his brother intentionally misrepresenting himself as Plaintiff during a traffic stop. Presently before the court is a motion to dismiss filed by Defendants Hunter, Lambrino, Mimm, and Gavazzi (collectively "Dauphin County Defendants") (Doc. 22), wherein they contend that Plaintiff has failed to state a valid Section 1983 claim. For the following reasons, the Dauphin County Defendants' motion will be granted.

# I.     <u>Background</u>

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Thus, for the purposes of the motion *sub judice*, and in light of the record presently in existence, the court only considers the allegations contained in the amended complaint (Doc. 7) and exhibits submitted in support thereof (Doc. 3).

## A.     <u>Facts</u>[1]

At the time relevant to the instant action, Plaintiff, Ever Uribe Perez Velazquez, was 27 years old, and approximately five feet and a half-inch tall. (Doc. 7, ¶¶ 17-20; *see also* Doc. 3-1.) Plaintiff's brother, Jose Luis Perez Velazquez ("Jose"),[2] was 21 years old,[3] and approximately five feet and seven inches tall. (Doc. 7, ¶¶ 31, 32.) Both Plaintiff and Jose are Hispanic and citizens of Mexico (*Id.* at ¶¶ 17, 21, 31), and while Plaintiff "understands some English" but speaks only Spanish (*Id.* at ¶ 22), Jose speaks some English (*Id.* at ¶ 33). Defendant Brian Hunter ("Defendant Hunter") is a Dauphin County Deputy Sheriff. (*Id.* at ¶ 8.) Defendants Jason Lambrino, Steven Mimm, and Joseph Gavazzi are each Dauphin County

---

[1] As required when deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations contained in Plaintiff's amended complaint. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[2] For ease of reference, Plaintiff's brother is referred to as "Jose." Such use of a more familiar name is intended solely to avoid confusion between Plaintiff and his brother. No disrespect is intended to Plaintiff's brother by the use of this name convention.

[3] Jose was 21 years old at the time of the events providing the basis for Plaintiff's claims, *i.e.*, Plaintiff's arrest and subsequent detention beginning on June 11, 2011. The court notes that at the time of the underlying event, *i.e.*, the date Jose was stopped by Corporal Gamez and had a blood alcohol level of .081% on November 19, 2010, Jose was only 20 years old.

assistant public defenders (collectively "Public Defender Defendants") (*Id.* at ¶¶ 13-15), who each represented Plaintiff in connection with the underlying criminal action underlying the instant Section 1983 claim.

The facts giving rise to the claims against the Dauphin County Defendants arise from Pennsylvania State Police Corporal Richard Gamez's stop of Plaintiff's vehicle, a burgundy 1998 Ford Windstar minivan, on November 19, 2010, at approximately 9:30 p.m. within the Middle District of Pennsylvania. (*See* Doc. 7, ¶¶ 35, 36; Doc. 3-3.) According to Corporal Gamez's affidavit of probable cause, he initiated the traffic stop due to his observing the vehicle traveling fifteen miles per hour over the speed limit, swerving, crossing the white fog line on three occasions, and nearly striking the westside guardrail. (Doc. 3-3, p. 6 of 6.) Jose identified himself as Plaintiff by giving Plaintiff's Mexican passport, which was in the glovebox, to Corporal Gamez. (Doc. 7, ¶¶ 38, 39.) During the encounter, Corporal Gamez observed several indicia of intoxication, and after Jose failed a portable breath test, Corporal Gamez arrested him for driving under the influence of alcohol, and drove him to the Harrisburg Hospital for a blood test, the results of which confirmed that Jose's blood alcohol content was in excess of the legal limit. (*Id.* at ¶¶ 40, 41; Doc. 3-3, p. 6 of 6.) Corporal Gamez released custody of Jose after photographing him and informing him that he would receive a summons to appear in court. (Doc. 7, ¶¶ 42, 43.) Because Jose produced Plaintiff's passport as his only form of identification, Corporal Gamez released Jose believing him to be Plaintiff. (*Id.* at ¶ 39; *see also* Doc. 3-3, p. 6 of 6.)

On November 30, 2010, Corporal Gamez filed a police criminal complaint charging Plaintiff with six counts related to the November 19, 2010

incident.  (*See* Doc. 7, ¶ 44; *see also* Doc. 3-3.)  In the affidavit of probable cause, Corporal Gamez recounted the events giving rise to the stop, and stated that "[t]he defendant was identified by his International ID as Ever URIVE [sic] PEREZ, DOB: [redacted as submitted]."  (Doc. 3-3, p. 6 of 6.)

On December 1, 2010, Magisterial District Judge Gregory D. Johnson issued a summons for Plaintiff to appear for a preliminary hearing scheduled for February 7, 2011.  (Doc. 7, ¶¶ 49, 53.)  The court sent two copies of the summons both to Plaintiff's address, the first by certified mail, which was accepted by an individual whom Plaintiff fails to identify (*Id*. at ¶ 51), and the second by regular mail, which was not returned as undeliverable (*Id*. at ¶ 52).  Nevertheless, Plaintiff contends he did not receive either copy of the summons, and consequently, failed to appear.  (*Id*. at ¶¶ 50, 54.)

Due to Plaintiff's failure to appear, Magisterial District Judge Johnson transferred the case to the Dauphin County Court of Common Pleas and requested a bench warrant be issued on February 9, 2011.  (*Id*. at ¶ 55.)  On February 11, 2011, Dauphin County Court of Common Pleas Judge Andrew Dowling issued a bench warrant for Plaintiff's arrest, which ordered that "the Sheriff of Dauphin County, or any other police officer . . . convey and deliver [Plaintiff] . . . into the custody of the [Dauphin County] Court [of Common Pleas]," but instructed that, if the court was unavailable, the individual may be held at the county jail pursuant to the Pennsylvania Rule of Criminal Procedure 150(A)(5)(b).  (Doc. 3-4, p. 1 of 5.)  The bench warrant listed the reason for its issuance as "Failure to Appear," identified Plaintiff as the individual to be seized, and was signed by Judge Dowling.  (*Id*.)

4

On June 11, 2011, at approximately 11:00 a.m., Middletown Police Officer Andrew Crone stopped Plaintiff, who was operating his vehicle in the Middle District of Pennsylvania, for speeding. (Doc. 7, ¶ 60.) Plaintiff provided Officer Crone with several documents, including his passport. (*Id.* at ¶ 62.) Upon inspecting the documents, Officer Crone reentered his vehicle, at which time he presumably discovered the outstanding bench warrant for Plaintiff's arrest. (*See id.* at ¶ 63.) Thereafter, three additional police vehicles arrived, and Officer Crone effectuated Plaintiff's arrest with the assistance of several other law enforcement officers, who are identified in the complaint as "John Does 1-6." (*Id.* at ¶ 64.) Plaintiff understood only portions of what the officers said because they spoke only English.[4] (*Id.* at ¶ 65.) Plaintiff was transported to Dauphin County Prison, at which time he was strip-searched, fingerprinted, given a tuberculosis test, outfitted with prison clothes, and interviewed in English, during which he was able to provide answers to biographical questions. (*Id.* at ¶¶ 71, 75-77.) Plaintiff alleges he "had no idea why he was being jailed." (*Id.* at ¶ 80.) Dauphin County Deputy Sheriff Brian Hunter signed the warrant and returned it as executed to the Dauphin County Court of Common Pleas on June 15, 2011. (*Id.* at ¶ 90.)

On June 13, 2011, Plaintiff appeared by way of video before Judge Bernard Coates Jr., with the assistance of Defendant Assistant Dauphin County Public Defender Jason Lambrino ("Defendant Lambrino"). (*Id.* at ¶¶ 81, 83.) No interpreter was present, and neither Judge Coates nor Defendant Lambrino spoke

---

[4] The court notes that several of Plaintiff's averments are arguably contradictory. For instance, Plaintiff avers that he does understand some English, and understood that the law enforcement officials "were mocking him because he couldn't speak English," saying that "he shouldn't be in this country if he can't speak English." (Doc. 7, ¶ 70.) However, Plaintiff avers that he was unable to understand the reason for his arrest. (*Id.* at ¶ 69.)

Spanish. (*Id*. at ¶ 84.) With the consent of counsel, the hearing was continued due to the absence of an interpreter until June 16, 2011. (*Id*. at ¶ 86.) At the June 16, 2011 hearing, Plaintiff appeared by way of video before Judge Deborah E. Curcillo and with the assistance of Defendant Assistant Dauphin County Public Defender Steven Mimm ("Defendant Mimm"). (*Id*. at ¶¶ 92, 93.) Again, no interpreter was present. (*Id*. at ¶ 92.) Judge Curcillo set Plaintiff's bail at $10,000.00 without objection from Defendant Mimm. (*Id*. at ¶¶ 94, 95.) Again, with the consent of counsel, the hearing was continued due to the absence of an interpreter, until June 29, 2011. (*Id.* at ¶¶ 95, 96.) For the June 29, 2011 hearing, over which Judge Curcillo again presided, Plaintiff was brought to the courthouse, but was held downstairs in a holding cell. (*Id*. at ¶¶ 96, 98.) Again, no interpreter was provided. (*Id*. at ¶ 97.) Defendant Assistant Dauphin County Public Defender Joseph Gavazzi ("Defendant Gavazzi") requested yet another continuance for lack of an interpreter and waived Plaintiff's right to a speedy trial. (*Id*. at ¶ 99.) The matter was rescheduled for August 10, 2011, at which time Plaintiff was again represented by Defendant Gavazzi, who again requested a continuance for lack of an interpreter. (*Id.* at ¶ 101.)

Plaintiff retained private counsel, who filed a motion to dismiss the charges, arguing that Plaintiff was not the individual driving the vehicle on November 19, 2010. (*Id*. at ¶¶ 103, 104.) Ultimately, a hearing before Judge Curcillo was held on October 18, 2011, at which time Corporal Gamez compared a photograph of the individual taken at Harrisburg Hospital on the night of the incident to Plaintiff and realized that Plaintiff was not the individual whom he pulled over on November 19, 2010. (*Id*. at ¶ 107; Doc. 3-7, p. 2 of 4.) The county prosecutor agreed to amend the information to reflect the name of the individual who was

actually driving, Jose, and release Plaintiff. (*Id.* at p. 2 of 4.) Plaintiff was released from custody on October 18, 2011. (Doc. 7, ¶ 108.)

### B. Procedural History

Plaintiff initiated this action on June 10, 2013, and filed his first amended complaint on June 28, 2013. (Doc. 7.) In his complaint, Plaintiff asserted several constitutional claims, pursuant to 42 U.S.C. § 1983, and named ten defendants, including two police officers, a county sheriff, three state judges, a court administrator, and three public defenders, in addition to twelve unidentified "Jane" or "John" Doe individuals. (*Id.*) Relevant to the instant motion, Plaintiff claimed that Defendant Hunter's arresting Plaintiff constituted an unlawful seizure in violation of the Fourth and Fourteenth Amendments (*Id.* at ¶¶ 135-143), and constituted false arrest, false imprisonment, and malicious prosecution under Pennsylvania state law (*Id.* at ¶¶ 149-152). Plaintiff further claimed that Defendants Lambrino, Mimm, and Gavazzi deprived Plaintiff of his fundamental substantive and procedural due process rights, in violation of the Fourteenth Amendment, due to their actions in the course of representing Plaintiff during the hearings. (*Id.* at ¶¶ 153-165.)

On August 26, 2013, the Dauphin County Defendants jointly filed a motion to dismiss the claims asserted against them. (Doc. 22.) As the basis for their motion, the Dauphin County Defendants argued that Plaintiff failed to state a claim upon which relief can be granted. (*Id.*) In support of the motion as it pertains to Defendant Hunter, the Dauphin County Defendants argue that, because Defendant Hunter arrested Plaintiff pursuant to a facially valid warrant, he cannot be held liable for committing an unlawful seizure as a matter of law. (*Id.* at ¶¶ 11-12.) The

Dauphin County Defendants argued that, because the Public Defender Defendants acted as Plaintiff's attorneys during the hearings, they were not state actors, and therefore, were not acting under color of state law for purposes of Section 1983 liability. (*Id.* at ¶¶ 19-20.)

On September 10, 2013, Plaintiff filed a response, in which he argued, with respect to Defendant Hunter, that the warrant pursuant to which Defendant Hunter effectuated Plaintiff's arrest "was issued on less than probable cause and facially invalid." (Doc. 26, p. 2 of 5.) With respect to the Public Defender Defendants, Plaintiff argued that the Public Defender Defendants "conspired with state actors to deprive Plaintiff of federal rights," and therefore are subject to liability under Section 1983. (*Id.* at p. 4 of 5.) The Dauphin County Defendants filed a reply on September 23, 2013. (Doc. 29.) Thus, the matter has been fully briefed and is ripe for consideration.

## II.     Legal Standard

The Dauphin County Defendants' motion challenges Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S 41, 47 (1957)). While a complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, 500 F. App'x at 104 (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "take note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id.* Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 588 n.8). Rather, Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id.* at 234.

## III.      Discussion

As Plaintiff brings his claims pursuant to Section 1983, the court will briefly address the law as it pertains to that statute. Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

> within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## A.    Defendant Hunter

Plaintiff claims that Defendant Hunter violated his Fourth Amendment right to be free from unreasonable seizures, in this case free from false arrest and false imprisonment. A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (2000). A seizure occurs even when an unintended person is the object of detention, so long as the means of detention are intentionally applied to that person. *Id.* (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989)).

The Fourth Amendment provides the right to be free from unreasonable seizures, a right that an arresting officer violates when the officer arrests a person without probable cause. *See Hanks v. Cnty. of Delaware*, 518 F. Supp. 2d 642, 648

(E.D. Pa. 2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). Probable cause exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a reasonable person to believe than an offense has been or is being committed by the person to be arrested. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). When a defendant is named in a facially valid bench warrant, probable cause for arrest exists, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid. *United States v. Smith*, 468 F.2d 381 (3d Cir. 1972); *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (maintaining that a bench warrant is the equivalent to a judicial determination of probable cause); *Carter v. Balt. Cnty.*, 95 F. App'x 471, 479 (4th Cir. 2004) (finding that once an arresting officer ascertained that the plaintiff was the individual listed on the bench warrant, the officer had "probable cause (and indeed the duty) to serve the warrant and take [the plaintiff] into custody"). This is true so long as a reasonably well-trained officer would not have known that the arrest was illegal despite there being a bench warrant. *See United States v. Leon*, 468 U.S. 897, 922 n.3 (1984) (holding that physical evidence seized pursuant to a facially valid warrant is admissible, even though a reviewing court has subsequently determined that the warrant was defective).[5]

      The law of the state where the arrest occurs controls whether the arrest is valid. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). A claim for false arrest under Pennsylvania law is coextensive with one made under Section 1983. *Kokinda v. Breiner*, 557 F. Supp.

---

[5] Although *Leon* arose in the context of a search warrant, the principles enunciated apply with equal force to arrest warrants, because both implicate significant Fourth Amendment concerns. *See Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986).

2d 581, 592-93 (M.D. Pa. 2008). To state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012). That is, "where the police lack probable cause to make an arrest, the arrestee has a claim under Section 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

There is no doubt that Plaintiff's arrest pursuant to the bench warrant constituted a seizure for Fourth Amendment purposes. However, there is serious doubt as to whether Defendant Hunter seized Plaintiff. The court notes that, after discounting the paragraphs in Plaintiff's complaint that contain only biographical information (*see, e.g.*, Doc. 7, ¶ 8), statements that are not entitled to the assumption of truth because they are no more than conclusions (*see, e.g.*, *id.* at ¶¶ 139, 140-42, 150), and prayers for relief (*see, e.g.*, *id.* at ¶¶ 143, 152), Defendant Hunter's name only appears in one averment. That averment states, in its entirety, as follows: "The Court of Common Pleas received the bench warrant, signed by then-Dauphin County Deputy Sheriff Brian Hunter, on June 15, 2011." (*Id.* at ¶ 90.) It is well-established that liability under Section 1983 may only be based upon a defendant's personal involvement amounting to a constitutional violation. *See Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976) ("[I]n Section 1983 suit, liability may not be imposed on the traditional standards of respondeat superior."). Therefore, to survive a Rule 12(b)(6) motion, the complaint must contain averments establishing each defendant's involvement in the conduct that caused a violation of Plaintiff's constitutional rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Plaintiff has not alleged facts in his complaint from which it can

13

reasonably be inferred that Defendant Hunter's personal conduct violated his constitutional rights. Indeed, Plaintiff alleges that Officer Crone, with the assistance of six unidentified officers, effected Plaintiff's arrest on June 11, 2011. Plaintiff fails to adequately allege how Defendant Hunter's name appearing on the bench warrant violated his constitutional rights and fails to allege facts sufficient to show that Plaintiff has a "plausible claim for relief" for a Section 1983 claim against Defendant Hunter.

Plaintiff's claim nevertheless fails even assuming Defendant Hunter had personal involvement with causing Plaintiff's arrest. The Dauphin County Defendants argue that Defendant Hunter cannot be liable for a false arrest claim asserted under Section 1983 because he was entitled to rely on a facially valid warrant. Plaintiff concedes that "a law enforcement officer is generally entitled to rely on a warrant," but places this case outside the general rule because the "warrant executed by Defendant Hunter had been issued in reliance on a recklessly false affidavit." (Doc. 26, p. 2 of 5.) The affidavit that Plaintiff claims to be "recklessly false" is the affidavit of probable cause submitted in support of the charges levied, albeit mistakenly, against Plaintiff. Plaintiff's argument misses the mark.

In actuality, Plaintiff's argument appears to be based on the actions of Corporal Gamez in preparing the affidavit of probable cause supporting the issuance of the summons. Specifically, it was Corporal Gamez's affidavit of probable cause that caused Magisterial District Judge Johnson to issue the summons. It was Plaintiff's failure to appear as directed by the summons that caused the bench warrant to be issued by Judge Dowling. An individual is required to appear when summoned, and nonappearance provides probable cause to apply for a bench

warrant.  *Bittner v. Snyder Cnty., Pa.*, 345 F. App'x 790, 792 (3d Cir. 2009) (citing *In re Grand Jury Proceedings*, 658 F.2d 211, 214 (3d Cir. 1981)).  At most, Plaintiff appears to attack the actions of Corporal Gamez that underlay the issuance of the summons – not the bench warrant pursuant to which Plaintiff was arrested.  More importantly, the court cannot conclude, based on the facts averred in the complaint and following a review of the arrest warrant attached thereto, that Defendant Hunter was not entitled to rely on the warrant.  Indeed, Plaintiff fails to allege a basis for finding that the warrant is facially invalid, and admittedly failed to appear at the hearing as directed by the summons.  Because Defendant Hunter arrested the person identified in the facially valid warrant,[6] he had probable cause to arrest Plaintiff, and

---

[6]  To clarify, the court is assuming, for purposes of this discussion, that Defendant Hunter participated in the arrest or otherwise contributed to the Plaintiff's detention, although the complaint fails to particularize Defendant Hunter's involvement beyond his name appearing on the warrant.

Plaintiff's constitutional claim fails.[7]  For these reasons, the court will dismiss

Counts I and III against Defendant Hunter.

## B.  <u>The Public Defender Defendants</u>

Plaintiff claims that the Public Defender Defendants deprived him of his

substantive and procedural due process rights, in violation of the Fourteenth

Amendment, when they agreed to continuances due to the lack of an interpreter.  The

Dauphin County Defendants' motion to dismiss requests dismissal of these claims,

on the basis that the Public Defender Defendants were not state actors.  While

apparently conceding public defenders do not act under color of state law in the

normal course of conducting the defense, Plaintiff argues that the Public Defender

_____

[7] Moreover, even if the arrest constituted a constitutional violation, Defendant Hunter may still be able to avail himself of the defense of qualified immunity because his conduct would not be clearly unlawful to a reasonable officer in his situation.  *See Saucier v. Katz*, 533 U.S. 194, 202 (2001).  Although whether qualified immunity insulates Defendant Hunter from suit was not an issue briefed by the parties, the complaint's factual averments, or lack thereof, clearly show that Defendant Hunter acted pursuant to a facially valid bench warrant issued for Plaintiff's failure to appear, and nothing suggests Defendant Hunter otherwise knew Plaintiff was not the individual charged by Corporal Gamez.  *Cf. Garcia v. Cnty. of Bucks, Pa.*, 155 F. Supp. 2d 259, 266 (E.D. Pa. 2001) (stating that complaint failed to state a claim for false arrest based on mistaken identity when officer did not know they were arresting the wrong person).

The Third Circuit generally extends immunity to officers who make an arrest based on an objectively reasonable belief that there is a valid warrant because police officers are not constitutionally obligated to investigate every claim of innocence.  *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979).  In determining what would have been clearly unlawful to a reasonable officer, the Third Circuit gives "ample room" for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000).  In *Berg*, the Third Circuit found that an arresting officer, who personally observed evidence indicating that the individual arrested was no longer on probation and therefore could not have violated his probation, may not have acted reasonably when arresting an individual named on the facially valid arrest warrant that had been issued for the plaintiff due to a clerical error.  219 F.3d at 273.  The Third Circuit remanded so the District Court could determine the reasonableness of the arresting officer's behavior, reasoning that reliance on a warrant may not be reasonable if the officer possessed or had reasonable access to information that would make the arrest unreasonable.  *See id.*  In this case, assuming Defendant Hunter had personal involvement in detaining Plaintiff, he did so pursuant to a facially valid warrant, and the complaint fails to allege any circumstances tending to show it was anything other than objectively reasonable for him to believe probable cause for Plaintiff's arrest existed.

Defendants are nevertheless liable under Section 1983 for their participation in a "conspiracy with state officials to deprive [Plaintiff] of federal rights." (Doc. 26, p. 4 of 5.) The court finds this argument, while creative, to be inadequately supported by the complaint's allegations. The complaint, therefore, fails to state a claim upon which relief can be granted with respect to the Public Defender Defendants.

An explicit requirement for liability under Section 1983 is that the defendant must have acted "under color of state law." 42 U.S.C. § 1983; *accord Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010). A defendant acts under color of state law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23 (3d Cir. 1997). A person may be found to be a state actor when: (1) he is a state official; (2) he has acted together with or has obtained significant aid from state officials; or (3) his conduct is, by its nature, chargeable to the state. *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) (internal quotation marks omitted); *see also Ashton v. City of Uniontown*, 459 F. App'x 185, 190 n.2 (3d Cir. 2012). It is well established that "generally, a public defender is not a state actor for purposes of [Section] 1983." *Schlicten v. Cnty. of Northampton*, 279 F. App'x 176, 179 (3d Cir. 2008) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). Attorneys performing their traditional functions will not be considered state actors for purposes of Section 1983 action. *Angelico*, 184 F.3d at 277 (citing *Dodson*, 454 U.S. at 318). The same remains true when representing a defendant during a criminal proceeding, even if appointed and paid for

by the state. *Dodson*, 454 U.S. at 325; *Santos v. Sec'y of D.H.S.*, No. 12-4151, 2013 WL 1749474, *2 (3d Cir. Apr. 24, 2013) (affirming dismissal of the Section 1983 claims against the plaintiff's court-appointed attorney "because she is not a state actor and is thus not a proper defendant under § 1983"); *see also Kontaxes v. Connors*, Civ. No. 12-cv-1164, 2012 WL 6762023, *3 (W.D. Pa. Nov. 23, 2012) (dismissing the defendant-attorney on this basis, and clarifying that "it does not matter . . . whether the criminal defendant's attorney was privately retained, court appointed[,] or a public defender because a criminal defense attorney does not act under color of state law irrespective of whether he is a public defender, a court appointed private attorney[,] or a privately retained attorney").

Plaintiff's complaint clearly demonstrates that the Public Defender Defendants were representing him and performing the usual functions of legal counsel during the preliminary stages of litigation. Although the consequences of the Public Defender Defendants' acquiescence for continuances may be troubling, the alleged actions occurred in the course of representing Plaintiff and fall squarely within *Polk County*'s ambit of performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding. Thus, Plaintiff has failed to sufficiently allege that the Public Defender Defendants were state actors.

Nevertheless, to avoid dismissal, Plaintiff argues in his response that the Public Defender Defendants conspired with state judges to deny Plaintiff his fundamental rights to procedural and substantive due process. (Doc. 26, p. 4 of 5.) In their reply, the Public Defender Defendants contend that Plaintiff failed to state a conspiracy claim as a matter of law. (*See* Doc. 29, pp. 5-10 of 10.) Generally, to establish a conspiracy under Section 1983, "a plaintiff must show that two or more

conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, No. 13-1283, 2013 WL 2636643, *3 (3d Cir. June 13, 2013) (quoting *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993)). More specifically, to assert a conspiracy under Section 1983, a plaintiff must establish the elements of a state law conspiracy claim. *See Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir. 1974). In Pennsylvania, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Williams v. W. Wayne Sch. Dist.*, Civ. No. 12-cv-2074, 2013 WL 4718920, *8 (M.D. Pa. Sept. 3, 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008). "[A] conspiracy claim 'must include at least a discernable factual basis to survive a Rule 12(b)(6) dismissal.'" *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (quoting *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)). In other words, the plaintiff must allege "some factual basis to support the existence of the elements of a conspiracy," namely the existence of an agreement and concerted action. *Id*. (citing *Capogrosso*, 588 F.3d at 184); *Savage v. Judge*, 644 F. Supp. 2d 550, 561 (E.D. Pa. 2009) (stating that an agreement to do an unlawful act is "the *sine qua non* of a conspiracy"). It is not enough that the end result of the parties' independent conduct caused the plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism. *Savage*, 644 F. Supp. 2d at 561.

Plaintiff ignores these pleading requirements. Here, Plaintiff's complaint simply avers that the Public Defender Defendants "conspired [with state

judges] to deny Plaintiff his right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution." (Doc. 7, ¶ 160.) In his reply brief, Plaintiff highlights the basis for his claim, arguing that the Public Defender Defendants "agreed to the rescheduling of Plaintiff's criminal proceeding for lack of an interpreter, causing a four-month delay in Plaintiff's opportunity to be meaningfully heard by the state court and prolonging his imprisonment. (Doc. 26, p. 5 of 5.) Plaintiff cites to portions of the transcripts from the hearings where Defendants Lambrino and Mimm agreed to the rescheduling, and contends that the Public Defender Defendants' "agreements with state judges to reschedule hearing after hearing blocked Plaintiff's timely and meaningful access to the courts." (*Id.*) What Plaintiff fails to allege in his complaint – or even argue in his response – is that there existed a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose. *See Williams*, 2013 WL 4718920 at *8 (citing *Phillips*, 959 A.2d at 437). A conclusory accusation of conspiracy, without more, does not suffice. *See Fisher v. Confer*, No. 08-3297, 2009 WL 405551 (3d Cir. Feb. 19, 2009) (dismissing appeal after finding that the plaintiff's "vague allegations of a conspiracy between defense counsel and the police were frivolous"). Accordingly, the court concludes Plaintiff has failed to state a conspiracy claim against the Public Defender Defendants, and will dismiss all claims against them.

**IV.**     <u>**Conclusion**</u>

Plaintiff's 129 days of incarceration based on mistaken identity is both unfortunate and troubling. However, it cannot be overlooked that the mistaken identity and subsequent arrest of Plaintiff was the end result of affirmative conduct of Jose's masquerading as Plaintiff during a traffic stop. The facts of this case, as

pleaded in the complaint, establish that Defendant Hunter participated in returning as executed a facially valid bench warrant issued for Plaintiff's failure to appear at a preliminary hearing to which he, rather than Jose, was summoned.  Because Plaintiff fails to plead facts to show Defendant Hunter's reliance thereon was unreasonable, Defendant Hunter will be dismissed from the action.  Moreover, the complaint clearly demonstrates that the Public Defender Defendants were representing Plaintiff and performing the usual functions of legal counsel during the preliminary stages of litigation, and thus not state actors for purposes of Section 1983 liability.  Plaintiff's conclusory statement that the Public Defender Defendants and state judges conspired to deprive Plaintiff of his substantive and procedural due process rights falls well below the federal pleading standards.  Because the Public Defender Defendants are not state actors for purposes of Section 1983 and because Plaintiff fails to otherwise plead a claim for conspiracy, the court concludes that Plaintiff has failed to state a claim upon which relief can be granted against the Public Defender Defendants.  For these reasons, the court will grant the Dauphin County Defendants' motion to dismiss in its entirety, and dismiss Counts I and III as against Defendant Hunter, and Counts IV and V as against Defendants Lambrino, Mimm, and Gavazzi.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  November 18, 2013.