IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVER PEREZ, | : | CIVIL NO. 1:13-CV-01552 |
| **Plaintiff** | : | |
| v. | : | |
| CORPORAL RICHARD GAMEZ, OFFICER ANDREW CRONE, BRIAN HUNTER, OFFICERS JOHN DOE 1-6, PRESIDENT JUDGE TODD A. HOOVER, CAROLYN C. THOMPSON, JUDGE BERNARD L. COATES, JR., JUDGE DEBORAH E. CURCILLO, JASON ANTHONY LAMBRINO, STEVE ALLEN MIMM, JOSEPH MARTIN GAVAZZI AND DAUPHIN JANE DOES 1-16 | : | JUDGE SYLVIA H. RAMBO |
| **Defendants** | : | |

## M E M O R A N D U M

In this Section 1983 civil rights action, Plaintiff has sued multiple individuals alleging, *inter alia*, violations of his Fourteenth Amendment substantive and procedural due process rights as a result of Plaintiff's detention at Dauphin County Prison from June 11 to October 18, 2011. Presently before the court is a motion to dismiss filed by Defendants President Judge Hoover, Judge Coates, Judge Curcillo, and District Court Administrator Thompson (collectively "Judicial Defendants"). (Doc. 28.) The issue presented by this motion is whether Plaintiff's claims against the Judicial Defendants are barred by judicial, legislative, or qualified immunity, or in the alternative, whether Plaintiff has failed to state a claim against Judicial Defendants. For the following reasons, the motion will be granted because judicial immunity bars the claims against Defendant Judge Coates and Defendant Judge Curcillo, legislative immunity bars the claims against Defendant Judge

Hoover, and Plaintiff has failed to state a claim upon which relief can be granted against Defendant Thompson.

## I.        **Background**

Following a traffic stop on June 11, 2011, Plaintiff Ever Perez ("Plaintiff") was arrested and subsequently detained for approximately 130 days. Because Plaintiff was allegedly never told the reason for his arrest and was not given the opportunity to speak on his own behalf, and proceeded through the judicial process without access to an interpreter (Doc. 7, ¶¶ 56, 109), Plaintiff commenced this action against Judicial Defendants for violations of his procedural and substantive due process rights protected by the Fourteenth Amendment Rights (Docs. 1 & 7).[1] The facts underlying Plaintiff's claims against Judicial Defendants are as follows.

### A.      **Facts**[2]

Plaintiff is a Mexican citizen who speaks only Spanish, although he understands some English. (Doc. 7, ¶¶ 17, 22.) Plaintiff resided in Harrisburg, Pennsylvania from 2004 until February 2013. (*Id.* at ¶ 23.) During November and December of 2010, Plaintiff's brother, Jose Luis Perez Velazquez ("Jose"), occasionally resided at Plaintiff's home. (*Id.* at ¶ 30.) Jose is approximately five years younger and six-and-a-half inches taller than Plaintiff. (*See id.* at ¶¶ 17, 20, 31,

---

[1] Plaintiff also brings Fourth and Fourteenth Amendment claims of unlawful seizure and malicious prosecution and state law claims of false arrest, false imprisonment, and malicious prosecution against defendants other than Judicial Defendants.

[2] As required when deciding a motion to dismiss, the court will consider all well-pleaded factual allegations contained in Plaintiff's first amended complaint. (Doc. 7.)

32).  While Jose lived with Plaintiff, Plaintiff owned a Ford Windstar minivan that Jose occasionally borrowed.  (*Id.* at ¶¶ 25, 35.)

On November 19, 2010, while Jose was driving Plaintiff's minivan, Defendant Corporal Richard Gamez ("Defendant Gamez") initiated a traffic stop due to his observing the vehicle speed, swerve, and cross the fog line.  (*Id.* at ¶¶ 35-37.) Jose gave Plaintiff's Mexican identification, which was in the glove box, to Defendant Gamez rather than producing his own.  (*Id.* at ¶¶ 26, 38.)  As a result of failing a portable breath test, Jose was arrested and was taken to the Harrisburg Hospital for a blood test, the results of which indicated that Jose was operating the vehicle while his blood alcohol content was in excess of the legal limit.  (*Id.* at ¶ 40.) While at the hospital, Defendant Gamez took Jose's photograph, informed him that he would receive a summons to appear before court, and released him.  (*Id.* at ¶¶ 42, 43.)  Defendant Gamez released Jose from the hospital believing him to be Plaintiff.

As a result of Jose's November 19, 2011 arrest and misidentification of himself, Defendant Gamez filed a criminal complaint naming Plaintiff as the defendant with Magisterial District Judge Gregory D. Johnson ("MDJ Johnson"), which charged Plaintiff with six offenses.[3]  (*Id.* at ¶ 44.)  In the criminal complaint, Defendant Gamez stated that he identified Plaintiff based solely upon the Mexican identification provided by Jose at the time of the arrest.  (*Id.* at ¶ 47.)  Defendant

---

[3]  The criminal complaint charged Plaintiff with two counts of Driving Under the Influence of Alcohol or Controlled Substance, one count of Drivers Required to be Licensed, one count of Driving on Roadways Laned for Traffic, one count of Maximum Speed Limits, and one count of Careless Driving.  (*Id.* at ¶ 48.)

Gamez also stated that fingerprints were not taken (*Id.* at ¶ 45), and described the offender as being five feet and five inches tall (*Id.* at ¶ 46).[4]

On December 1, 2012, MDJ Johnson sent Plaintiff two summonses to his residence in Harrisburg, one by certified mail and the other by regular mail. (*Id.* at ¶ 49.) Plaintiff maintains that he never received either summons, despite court records reflecting that someone signed for the summons delivered by certified mail and that the summons sent by regular mail was not returned as undeliverable. (*Id.* at ¶¶ 50-52.) Plaintiff failed to appear for his preliminary hearing. (*Id.* at ¶ 53.) Consequently, MDJ Johnson transferred the case to Dauphin County Court of Common Pleas Judge Andrew H. Dowling, who issued a bench warrant for Plaintiff's arrest. (*Id.* at ¶¶ 55, 56.)

While driving his minivan on June 11, 2011, Plaintiff was stopped by Middletown Police Officer Andrew Richard Crone ("Defendant Crone"). (*Id.* at ¶ 60.) Defendant Crone examined Plaintiff's documents, including Plaintiff's Mexican identification, and returned to his vehicle, at which time he presumably discovered the bench warrant issued for Plaintiff. (*Id.* at ¶ 63.) Thereafter, three additional police vehicles arrived, and a total of eight law enforcement officers participated in arresting Plaintiff. (*Id.* at ¶ 64.)

After being held at the Middletown Police Station for two hours, Plaintiff was taken to Dauphin County Prison where he was strip-searched, fingerprinted, innoculated, dressed in prison clothes, and interviewed. (*Id.* at ¶¶ 71, 75.) The interview was conducted in English despite Plaintiff requesting a Spanish interpreter. (*Id.* at ¶¶ 76, 78.) Plaintiff was able to answer basic biographical

---

[4] Plaintiff is five foot and one half inch tall. (*Id.* at ¶ 20.)

questions in English, but could not understand the majority of the interview, including any statement that may have been made regarding the reason underlying his arrest. (*Id.* at ¶¶ 76, 77, 80.)

A series of four hearings were then held for Plaintiff at the Dauphin County Court of Common Pleas. (*See id.* at ¶¶ 81-101.) During the time period relevant to these proceedings, Judge Todd A. Hoover ("Defendant Judge Hoover") was the President Judge of the Dauphin County Court of Common Pleas and Carolyn C. Thompson ("Defendant Thompson") was the District Court Administrator for the Dauphin County Court of Common Pleas. (*Id.* at ¶¶ 9, 10.)

During the hearings, Plaintiff was not provided a Spanish interpreter and he was represented by three different public defenders, at least two of whom did not speak Spanish. (*See id.* at ¶¶ 81-100.) Plaintiff's first hearing took place on June 13, 2013. (*Id.* at ¶ 81.) At that hearing, the assistant district attorney stated that Plaintiff failed to appear for his preliminary DUI hearing, and then requested the hearing be continued so an interpreter could be provided. (*Id.* at ¶¶ 85, 86.) Judge Bernard L. Coates, Jr. ("Defendant Judge Coates") granted the request and continued the proceedings until June 16, 2011. (*Id.* at ¶ 87.) Plaintiff avers that he did not understand what was being said at the June 11, 2011 hearing, and was not given the opportunity to speak. (*Id.* at ¶ 88.)

The second hearing was held on June 16, 2011, at which time Judge Deborah E. Curcillo ("Defendant Judge Curcillo") set bail for Plaintiff at $10,000.00,[5] without hearing from Plaintiff, and continued the hearing so that an

---

[5] It should be noted that the transcript submitted with the complaint demonstrates that Plaintiff was otherwise subject to an ICE detainer. (Doc. 3-6, p. 3.)

interpreter could be provided. (*Id.* at ¶¶ 91-93.) At the third hearing, which was held on June 29, 2011, Defendant Judge Curcillo again presided. Despite the second hearing being continued for purposes of obtaining an interpreter, an interpreter was again absent from the third hearing. (*Id.* at ¶¶ 96, 97.) Plaintiff was not present in the courtroom for the third hearing, at which time Plaintiff's public defender waived Plaintiff's right to speedy trial and again requested a continuance for lack of an interpreter. Defendant Judge Curcillo granted the continuance and rescheduled the hearing for August 10, 2011. (*Id.* at ¶¶ 98-100.) At the rescheduled hearing on August 10, 2011, the assistant public defender again requested and received a continuance. (*Id.* at ¶ 101.)

After the August 10, 2011 hearing, Plaintiff retained a private attorney, and on August 30, 2011, the private attorney filed a motion to dismiss the charges on the basis that Plaintiff was not the individual who was driving the vehicle on November 19, 2011. (*Id.* at ¶¶ 103, 104.) A hearing was held on October 18, 2011, at which time an interpreter was provided. (*Id.* at ¶¶ 105, 106.) The prosecutor agreed to amend the charges to reflect Jose's name after Defendant Gamez stated that Plaintiff was not the individual that he had pulled over on November 16, 2010. (*Id.* at ¶ 107; Doc. 3-7, p. 3 of 4.) Plaintiff was released from custody that day. (Doc. 7, ¶ 108.)

Plaintiff claims that he suffered substantial damages, including physical pain and suffering, emotional distress and harm, embarrassment, lost wages and employment, other financial losses, and loss of liberty as a result of his being in custody. (*Id.* at ¶ 126.)

## B. Procedural History

Plaintiff filed his original complaint on June 10, 2013 (Doc. 1) and an amended complaint on June 28, 2013 (Doc. 7). Plaintiff's amended complaint sets forth, *inter alia*, two Fourteenth Amendment claims against Judicial Defendants, the first asserting violations of his substantive due process rights and the second asserting violations of his procedural due process rights.[6] (*See* Doc. 7.) On September 16, 2013, Judicial Defendants filed a motion to dismiss (Doc. 28), which was perfected on September 30, 2013 (Doc. 32). After the court granted an extension of time to respond (Doc. 41), Plaintiff filed a brief in opposition to Judicial Defendant's motion to dismiss on October 24, 2013 (Doc. 42). Judicial Defendants replied on November 7, 2013. (Doc. 44.) Thus, the issues have been fully briefed and the motion is now ripe for disposition.

## II. Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than allege the plaintiff's entitlement to relief; it must ""show" such an entitlement with its facts." *Id.* at 211. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it

---

[6] Although Plaintiff originally sued Defendant Judge Hoover and Defendant Thompson in both their individual and official capacities (Doc. 7, ¶¶ 9, 10), Plaintiff now pursues claims against all Judicial Defendants only in their individual capacities (Doc. 42, p. 1).

has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed. R. Civ. P. 8(a)). In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

   "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." (internal quotation omitted)). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.**       **Discussion**

Section 1983 of Title 42 of the United States Code provides private citizens a means to redress violations of federal law by state officials. The statute provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. However, this statute does not abrogate common law immunities that may be available to the state official, including judicial, legislative, and qualified immunity. *See Burns v. Reed*, 500 U.S. 478, 484 (1991); *see also McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) ("Despite these broad terms . . ., the Supreme Court has held consistently that [] Section 1983 did not abolish long-standing common law immunities . . . and defenses to civil suits."). The official seeking a common-law immunity bears the burden of showing that application of the immunity is justified. *Burns*, 500 U.S. at 486.

**A.**       **Judicial Immunity**

Under the doctrine of judicial immunity, a judge is granted absolute immunity from Section 1983 suits if: 1) the judge had jurisdiction over the dispute; and 2) the alleged violation occurred while the judge was performing a judicial act. *Clark v. Conahan*, 737 F. Supp. 2d 239, 256 (M.D. Pa. 2010) (citing *Wallace v. Powell*, No. 3:09-cv-286, 2009 LEXIS 109163, *7 (M.D. Pa. Nov. 20, 2009)). If the court finds that the action complained of is both within the judge's jurisdiction and constituted a judicial act, then the judge is entitled to judicial immunity regardless of whether the act was committed "in error, with malice, in excess of his authority, or

in conspiracy with others." *Johnson v. Jacques Ferber, Inc.*, No. 02-8508, 2003 WL 22594230, *2 (E.D. Pa., Oct. 15, 2003) (citing *Dennis v. Sparks*, 499 U.S. 24 (1980)).

## 1. <u>Jurisdiction</u>

In determining whether a judge had jurisdiction over a dispute for purposes of judicial immunity, the "scope of the judge's jurisdiction must be construed broadly." *Clark*, 737 F. Supp. 2d at 256 (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Judicial immunity will only be defeated for lack of jurisdiction when the judge has performed "in the clear absence of jurisdiction." *Johnson*, 2003 WL 22594230 at *3 (citing *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000)); *Keener v. Feudale*, No. 89-2694, 1989 WL 60454, *1 (E.D. Pa., Jun. 6, 1989) (citing *Sparks*, 449 U.S. at 27). Even where the judge is mistaken about the status of jurisdiction or commits a procedural error that allows him or her to act without jurisdiction, he or she will still be granted judicial immunity. *Gallas*, 211 F.3d at 771.

In the instant case, the court has little trouble determining that Defendant Judge Coates and Defendant Judge Curcillo acted within their jurisdiction when they allegedly failed to appoint an interpreter and granted the continuances. Pennsylvania Court of Common Pleas judges have "unlimited original jurisdiction in all cases except as may otherwise be provided by law." PA. Const. art. V, § 5, cl. b; *Johnson*, 2003 WL 22594230 at *3. Both Defendant Judge Coates and Defendant Judge Curcillo had jurisdiction over Plaintiff's criminal case as presiding judge. Furthermore, 42 Pa.C.S. § 4412(a), which Plaintiff himself cites to, makes it clear that the Defendant Judges Coates and Defendant Judge Curcillo did not act outside their authority when they failed to appoint an interpreter to Plaintiff's case or when they granted the requested continuances. Indeed, Section 4412(a) of Title 42

requires a certified interpreter be appointed "if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English." 42 Pa. C.S. § 4412(a). This statute gave Defendant Judge Coates and Defendant Judge Curcillo express authority to decide whether to appoint an interpreter in a case pending before them, and was therefore unquestionably within their jurisdiction.

## 2. **Judicial Act**

Defining "judicial act" for purposes of judicial immunity requires a deeper analysis because the Supreme Court has not articulated a class of acts which are unquestionably considered "judicial. *Forrester v. White*, 484 U.S. 219, 227 (1988). This lack of guidance has led to inconsistent results among the circuits. However, in *Stump*, the Supreme Court articulated a two-factor framework to guide an analysis of whether a judge's action qualifies as a judicial act. The first factor assesses whether the challenged action is a function normally performed by the judge. *Stump*, 435 U.S. at 362. The second factor assesses whether the parties would expect to deal with the judge in his or her judicial capacity. *Id*. Thus, the test requires a court to analyze whether the function of the act performed is judicial in nature, rather than merely determining whether it was properly performed by a judge, because only acts that are judicial in nature are protected by judicial immunity. *Wallace*, 2009 LEXIS 109163 at *7-8. A judicial act must be distinguished from those acts that a judge was assigned to perform, but are administrative, legislative, or executive in nature. *Id.* at *7 (citing *Forrester*, 484 U.S. at 227). For example, in *Forrester*, the Supreme Court held that the judge firing an employee was administrative and not judicial in nature because it was not adjudicative and therefore outside the doctrine of judicial immunity. 484 U.S. at 229. Similarly, in *Ex Parte Virginia*, 100 U.S. 339 (1880), the Supreme Court held

11

that the preparation of an annual list for individuals eligible for grand jury was administrative in nature, and therefore outside the doctrine of judicial immunity.

To further aid in analyzing whether an act is judicial in nature under the *Stump* test, both the Fifth and Ninth Circuits have considered the following factors: "(1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 222-23 (5th Cir. 2009) (citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005)); *see also Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting *Meek v. Cnty. of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)). These factors must be interpreted broadly in favor of judicial immunity. *Davis*, 565 F.3d at 223 (citing *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir. 1993)).

For example, in *Davis*, the Fifth Circuit applied these factors and determined that the judge's selection of applicants to be included on a list eligible for court appointments was judicial in nature. *Davis*, 565 F.3d at 226. The court reasoned that selecting the applicants for the list was inextricably linked to appointing counsel to a case, which the court believed to be easily categorized as a judicial act. *Id*. This reasoning is consistent with the D.C. Circuit, which held in *Roth v. King,* 449 F.3d 1272 (D.C. Cir. 2006), that judges performed judicial acts when they devised and implemented a system for appointing attorneys to handle juvenile delinquency matters. The reasoning of the D.C. Circuit and Fifth Circuit diverge from that of the Second Circuit in *Mitchell*, 377 F.3d 157 (2d Cir. 2004), wherein the court held that forming a list of potential counsel to represent indigent defendants was an administrative act. The court emphasized that the appointments

in that case were not related to a particular criminal case before the judge, therefore supporting the conclusion that the act served an administrative function. *Id*. at 174.

Although this circuit has never decided whether the appointment of an interpreter qualifies as a judicial act, in *Lopez v. Young*, Civ. A. No. 86-7114, 1987 WL 13745, *1 (E.D. Pa. July 14, 1987), the District Court for the Eastern District of Pennsylvania held that judicial immunity applied to a common pleas judge who failed to provide an interpreter for a defendant in a criminal trial. The *Lopez* court reasoned that "it [was] within the court's discretion to decide whether an interpreter [was] necessary." *Id*.

In the instant case, Plaintiff argues that Defendant Judge Coates' and Defendant Judge Curcillo's failure to appoint an interpreter is not a judicial act because appointing an interpreter is mandated by 42 Pa.C.S. § 4412(a), which states in relevant part that "[u]pon request or sua sponte, if the presiding judicial official determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed." (Doc. 7, ¶ 114.) Although it may be mandatory to appoint an interpreter once the judge determines one is necessary, it is in the court's discretion to determine whether there is such a necessity. *See Lopez*, 1987 WL 13745 at *1. Therefore, even assuming *arguendo* that Defendant Judge Coates and Defendant Judge Curcillo erroneously decided that an interpreter was not necessary, their actions would still be shielded by judicial immunity provided such an act is judicial in nature under the *Stump* test.

However, the facts of this case appear to show that Defendant Judge Coates and Defendant Judge Curcillo did not refuse to appoint an interpreter. The transcripts attached to the complaint clarify that it was Plaintiff's public defenders

who stated they would provide an interpreter.[7] (*See* Doc. 7; *see also* Doc. 3-5, p. 2; Doc. 3-6, p. 2.) Defendant Judge Coates and Defendant Judge Curcillo were clearly of the impression that an interpreter would be provided by Plaintiff's public defender and they correctly used their discretion in determining that appointing an interpreter was unnecessary. The statute cannot be interpreted so narrowly as to require a judge to appoint an interpreter even when counsel has indicated that he or should would provide an interpreter. Furthermore, Defendant Judge Coates and Defendant Judge Curcillo granted continuances because defense counsel represented that an interpreter would be provided at the next proceeding. This is not a case where a judge failed to appoint an interpreter and then continued proceedings despite the lack of an interpreter.

---

[7] The following occurred at the hearing on June 13, 2011, before Defendant Judge Coates:

| [Defense counsel]: | We have an interpreter problem on this case. |
| The Court: | You mean you don't have one? |
| [Defense counsel]: | Yes. |
| | *        *        * |
| [The Prosecutor]: | Do you just want to schedule it for Thursday and have an interpreter out there? |
| [Defense counsel]: | Yeah, that would be best. |

(Doc. 3-5, p. 2.)

A similar exchange occurred at the hearing continued on June 16, 2011 before Judge Curcillo:

| [The Prosecutor]: | [Defense counsel] indicated that he needed an interpreter and that he would contact – or whoever would be contacted to get one. |
| | *        *        * |
| The court: | [Defense counsel], if I set him for tomorrow morning, will you have somebody to interpret? |
| [Defense counsel]: | I can certainly ask at the office. It's all about the availability, with the limited interpreters that we have. |

(Doc. 3-6, p. 2.)

Applying the *Stump* test and the Fifth and Ninth Circuit factors, the court finds that the challenged actions of Defendant Judge Coates and Defendant Judge Curcillo were judicial in nature. First, appointing an interpreter is a normal judicial function. Indeed, the authority to do so is codified at 42 Pa.C.S. § 4412(a), and is reserved to the "presiding judge." *See* 42 Pa.C.S. § 4412(a). Second, the challenged actions occurred in the courtroom during the time and place set for hearing. Third, the challenged actions directly related to Plaintiff's criminal charges that were pending before the court. Indeed, the reason Plaintiff needed an interpreter was to answer the charges brought against him. Fourth, the challenged actions occurred while Defendant Judge Coates and Defendant Judge Curcillo were acting in their official capacities as presiding judges. Certainly, Plaintiff would expect to deal with Defendant Judge Coates and Defendant Judge Curcillo in their judicial capacities during a hearing in his criminal case over which they were presiding.

Furthermore, relevant case law favors applying judicial immunity. The instant case is easily distinguished from *Forrester*, *Ex Parte Virginia,* and *Mitchell*. In each of these cases, the respective court held that the act complained of was administrative in nature because the actions challenged therein did not relate to a case pending before the defendant judge. Here, however, the challenged actions directly related to Plaintiff's criminal case actually pending before Defendant Judge Coates and Defendant Judge Curcillo. For this reason, the instant case presents a stronger basis for the application of judicial immunity than the facts in *Davis* and *Roth*, both of which held that appointments of attorneys to a list were judicial in nature.[8]

---

[8] For example, in *Davis*, the court reasoned that appointing attorneys to a list was judicial in nature, despite that forming the list did not directly relate to a specific case. The court reasoned that the formation of the list could not be separated from the clear judicial act of selecting an attorney from the

(continued...)

Based on the foregoing, the court concludes that the challenged actions of Defendant Judge Coates and Defendant Judge Curcillo constituted judicial acts. Because the actions of Defendant Judge Coates and Defendant Judge Curcillo were judicial acts made while they had jurisdiction over the dispute, they are entitled to judicial immunity. Because judicial immunity insulates judges from liability for Section 1983 claims, Plaintiff's claims against Defendant Judge Coates and Defendant Judge Curcillo will be dismissed.

## B.    Legislative Immunity

Under the doctrine of legislative immunity, an individual, including a judge, may be shielded from liability in a Section 1983 claim if the act alleged to violate the plaintiff's rights was both substantively and procedurally legislative. *Gallas*, 211 F.3d at 774; *see also Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) (holding that legislative immunity insulated judges while acting in their legislative capacity). An act is substantively legislative when it involves policy making decisions. *Gallas*, 211 F.3d at 774. In order to involve policy making decisions, the act must affect more than a small group of individuals. *Id.* An act is procedurally legislative if it is passed pursuant to an "established legislative procedure." *Id.* "This principle requires that constitutionally accepted procedures of enacting the legislation must be followed in order to assure that the act is a legislative, reasoned decision representing the will of the people." *Id.*

---

[8](...continued)
list to be appointed to a specific case. Applying *Davis*' reasoning to the instant case, there is stronger support for the application of judicial immunity because Defendant Judge Coates' and Defendant Judge Curcillo's granting continuances so that an interpreter could be provided was inextricably linked to their decision not to appoint an interpreter at the respective hearings. Granting continuances were clearly judicial acts. *See Johnson*, 2003 WL 22594230 at *3 ("Other courts have defined the grant or denial of a litigant's request for a continuance as a "judicial" act, and have exempted such actions from § 1983 claims on grounds of judicial immunity."). Thus, for this additional reason, the challenged actions were judicial in nature.

The next issue is whether the doctrine of legislative immunity applies to Defendant Judge Hoover's[9] alleged *failure* to adopt policies or procedures to ensure interpreters are available to criminal defendants. Other jurisdictions have categorized the failure to act in this regard as tantamount to an affirmative act. *See Martin v. Augusta-Richmond County*, CV 112-058, 2012 U.S. Dist. LEXIS 169099, 12-13 (D. Ga. 2012) ("Defendants' failure to enact a redistricting plan was quintessentially legislative, and [therefore defendants] are entitled to legislative immunity for this action."); *Fletcher v. U.S. Parole Comm'n*, 550 F. Supp. 2d 30, 39-40 (D.D.C. 2008) ("[T]he law is equally clear in this Circuit that federal officials are protected by absolute immunity for the promulgation of regulations and any accompanying failure to modify regulations."); *Tolman v. Finneran*, 171 F. Supp. 2d 31, 36 (D. Mass. 2001) ("[I]f the sole basis for a § 1983 action is the failure to pass legislation, legislative immunity would foreclosure suit.").

The court holds that the decision to implement policies relating to the appointment of interpreters is entitled to legislative immunity. Such an act is substantially legislative because implementing a policy for appointing an interpreter is a decision that affects a large number of individuals. Furthermore, the act is procedurally legislative in Pennsylvania because the president judge of each Court of Common Pleas is statutorily authorized to "promulgate all administrative rules and regulations." 42 Pa.C.S. § 325(e). Moreover, every court has the ability to make rules and orders of court as required by "the interests of justice or the business of the court." 42 Pa.C.S. § 323. These statutes were promulgated by the Pennsylvania

_____

[9] Although Judicial Defendants' brief in support of their motion to dismiss (Doc. 32) states that Defendant Thompson should also be shielded by legislative immunity, Defendant Thompson, as district court administrator, does not possess the statutory authority to make policy decisions of this nature, and therefore, fails to meet the procedurally legislative requirement. For this reason, claims against Defendant Thompson will be addressed separately.

legislature, and provide to President Judge Hoover the authority to act pursuant to constitutionally accepted procedures. Thus, Defendant Judge Hoover's actions taken pursuant to this authority is entitled to legislative immunity. Based on the foregoing, the claims against Defendant Judge Hoover based on his alleged failure to adopt policies and procedures to ensure interpreters for criminal defendants qualifies as a legislative act and is therefore entitled to legislative immunity. Accordingly, Plaintiff's claim against Defendant Judge Hoover will be dismissed.

## C. **Defendant Thompson**

Plaintiff brings two Section 1983 Fourteenth Amendment claims against Defendant Thompson, the first for allegedly violating his substantive due process rights, and the second for allegedly violating his procedural due process rights. In order to prevail on a Section 1983 action, a plaintiff must demonstrate that: (1) he suffered a violation of a right secured by the Constitution or law of the United States; and (2) that the alleged violation was committed by a person acting under the color of state law. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993). However, even if the plaintiff is successful in meeting these elements, the plaintiff must also show that the defendant was personally involved in the deprivation of the right. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Brown v. Rinehart*, 325 Fed. App'x 47, 50 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). The plaintiff may prove personal involvement by showing that the defendant either personally participated in the deprivation of the right or, under certain circumstances, that the defendant is liable under *respondeat superior*. *Rode*, 845 F.2d at 1207. A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor

approved." *Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 540 (M.D. Pa. 2012) (quoting *C. H. ex rel. Z. H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000)).

In the instant case, Plaintiff fails to adequately plead Defendant Thompson's personal involvement in the deprivation of his rights. Plaintiff cites to 42 Pa.C.S. § 4411, which states, in relevant part, that the Court Administrator "may establish a program to appoint and use certified interpreters in judicial proceedings," 42 Pa.C.S. § 4411(a), and "shall compile, maintain, and disseminate a current list of interpreters," 42 Pa.C.S. § 4411(b). However, this act applies to the Court Administrator of Pennsylvania, *see* 42 Pa.C.S. § 4402, and therefore neither grants authority to nor imposes duty upon a District Court Administrator, the position that Defendant Thompson actually held. The complaint does not make any other allegations that support the finding that Defendant Thompson had an affirmative duty to create a policy concerning interpreters. Furthermore, following the reasoning in *Loscombe*,[10] even assuming Defendant Thompson was obligated to implement policies and procedures for appointing an interpreter, Plaintiff nevertheless fails to plead how that obligation amounted to Defendant Thompson's specific involvement. In short, no reasonable inference establishes that Defendant Thompson was personally involved in the deprivation of Plaintiff's rights.

Instead of providing facts to support Defendant Thompson's personal involvement, Plaintiff merely alleges the following legal conclusions: "Defendants Hoover and Thompson jointly caused this violation by failing to adopt policies and procedures that ensure interpreters for criminal defendants with limited English proficiency," (Doc. 7, ¶¶ 155, 162), and "Defendants Hoover and Thompson acted

---

[10] In *Loscombe*, the plaintiff sued the town Mayor alleging that he failed to enforce city ordinances. 902 F. Supp. 2d at 534. The court held that although the city code required the Mayor to enforce all city ordinances, the plaintiff failed to show his personal involvement in their action. *Id.*

with deliberate indifference to the likelihood that violations of Plaintiff's fundamental rights would result from their failure to act" (*Id.* at ¶¶ 156, 163).[11] Plaintiff fails to show, for purposes of federal pleading standards, how Defendant Thompson acted with deliberate indifference by failing to implement a policy that Defendant Thompson had neither the authority nor duty to make.

Plaintiff does sufficiently plead that the District Court Administrator has a duty to appoint an interpreter by citing to 204 Pa. Code § 201(c), which states in relevant part that "[o]nce the . . . District Court Administrator . . . is made aware of the need for an interpreter, he or she shall procure a certified interpreter." (Doc. 7, at ¶ 115.) However, the complaint fails to allege that Defendant Thompson was "made aware" of Plaintiff's need for an interpreter, and further fails to allege Defendant Thompson did not provide an interpreter. Without these missing factual allegations, the court cannot conclude that Plaintiff has met his burden of pleading sufficient facts to support a plausible claim for relief against Defendant Thompson. Therefore, the court will dismiss all claims against Defendant Thompson for failure to state a claim upon which relief can be granted.

---

[11] Moreover, these paragraphs continue with the allegation that "[t]he lack of court interpreters was an ongoing problem acknowledged by the Pennsylvania legislature, which mandated [Defendant Judge Hoover and Defendant Thompson's] action to resolve it." (Doc. 7, ¶¶ 156, 163.) However, the only Pennsylvania statute that Plaintiff cites to regarding the Court Administrator's duties to develop policies to appoint interpreters states that the Court Administrator "*may* establish a program to appoint and use certified interpreters in judicial proceedings," 42 Pa.C.S. § 4411(a) (emphasis supplied), which refers to the Court Administrator of Pennsylvania, a position that Defendant Thompson did not occupy. Furthermore, the statute imposes a permissive, not mandatory, responsibility.

**IV.      Conclusion**

In accordance with the foregoing discussion, the court finds that the claims against Defendant Judge Coates and Defendant Judge Curcillo are barred by judicial immunity, that the claims against Defendant Judge Hoover are barred by legislative immunity, and that Plaintiff has failed to state a claim upon which relief can be granted against Defendant Thompson.  As a result, Judicial Defendant's motion will be granted in its entirety.  An appropriate order will issue.


                                                    s/Sylvia H. Rambo
                                                    SYLVIA H. RAMBO
                                                    United States District Judge

Dated:  November 22, 2013.