# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVER PEREZ, | Civil No. 1:13-CV-1552 |
| **Plaintiff** | |
| v. | |
| CORPORAL RICHARD GAMEZ; OFFICER ANDREW CRONE; BRIAN HUNTER; OFFICERS JOHN DOE 1-6; PRESIDENT JUDGE TODD HOOVER; CAROLYN THOMPSON; JUDGE BERNARD COATES, JR.; JUDGE DEBORAH CURCILLO; JASON LAMBRINO; STEVEN MIMM; JOSEPH GAVAZZI; DAUPHIN COUNTY JANE DOES 1-6, | |
| | **Judge Sylvia H. Rambo** |
| **Defendants** | |

## M E M O R A N D U M

In this Section 1983 civil rights action, Plaintiff has sued several individuals asserting violations of his rights protected by the Fourth and Fourteenth Amendments, as well as pendent state law claims. Plaintiff alleges that several police officers, a county sheriff, three judges, a district court administrator, three public defenders, and twelve unidentified individuals were the cause of his being incarcerated as the unfortunate result of his brother intentionally misrepresenting himself as Plaintiff during a traffic stop. Presently before the court is a motion to dismiss filed by Defendant Crone (Doc. 33), wherein he contends that Plaintiff has failed to state valid Section 1983 or Pennsylvania tort claims. For the following reasons, Defendant Crone's motion will be granted.

## I.        Background

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Thus, for the purposes of the motion *sub judice*, and in light of the record presently in existence, the court only considers the allegations contained in the amended complaint (Doc. 7) and exhibits submitted in support thereof (Doc. 3).

### A. Facts[1]

At the time relevant to the instant action, Plaintiff, Ever Uribe Perez Velazquez, was 27 years old, and approximately five feet and a half-inch tall. (Doc. 7, ¶¶ 17-20; *see also* Doc. 3-1.) Plaintiff's brother, Jose Luis Perez Velazquez ("Jose"),[2] was 21 years old,[3] and approximately five feet and seven inches tall. (Doc. 7, ¶¶ 31, 32.) Both Plaintiff and Jose are Hispanic and citizens of Mexico (*Id.* at ¶¶ 17, 21, 31), and while Plaintiff "understands some English" but speaks only Spanish (*Id.* at ¶ 22), Jose speaks some English (*Id.* at ¶ 33). Officer Andrew Crone ("Defendant Crone") was employed as a police officer with Middletown Borough Police Department. (*Id.* at ¶ 6.)

The facts giving rise to the claims against Officer Crone arise from Pennsylvania State Police Corporal Richard Gamez's stop of Plaintiff's vehicle, a burgundy 1998 Ford Windstar minivan, on November 19, 2010, at approximately

---

[1] As required when deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations contained in Plaintiff's amended complaint. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

[2] For ease of reference, Plaintiff's brother is referred to as "Jose." Such use of a more familiar name is intended solely to avoid confusion between Plaintiff and his brother. No disrespect is intended to Plaintiff's brother by the use of this name convention.

[3] Jose was 21 years old at the time of the events providing the basis for Plaintiff's claims, *i.e.*, Plaintiff's arrest and subsequent detention beginning on June 11, 2011. The court notes that at the time of the underlying event, *i.e.*, when Jose was stopped by Corporal Gamez on November 19, 2010, and had a blood alcohol level of .081%, Jose was only 20 years old.

9:30 p.m. within the Middle District of Pennsylvania. (*See* Doc. 7, ¶¶ 35, 36; Doc. 3-3.) According to Corporal Gamez's affidavit of probable cause, he initiated the traffic stop due to his observing the vehicle traveling fifteen miles per hour over the speed limit, swerving, crossing the white fog line on three occasions, and nearly striking the westside guardrail. (Doc. 3-3, p. 6 of 6.) Jose identified himself as Plaintiff by giving Plaintiff's Mexican passport, which was in the glovebox, to Corporal Gamez. (Doc. 7, ¶¶ 38, 39.) During the encounter, Corporal Gamez observed several indicia of intoxication and, after Jose failed a portable breath test, Corporal Gamez arrested him for driving under the influence of alcohol, and drove him to the Harrisburg Hospital for a blood test, the results of which confirmed that Jose's blood alcohol content was in excess of the legal limit. (*Id.* at ¶¶ 40, 41; Doc. 3-3, p. 6 of 6.) Corporal Gamez released Jose from custody after photographing him and informing him that he would receive a summons to appear in court. (Doc. 7, ¶¶ 42, 43.) Because Jose produced Plaintiff's passport as his only form of identification, Corporal Gamez released Jose believing him to be Plaintiff. (*Id.* at ¶ 39; *see* Doc. 3-3, p. 6 of 6.)

On November 30, 2010, Corporal Gamez filed a police criminal complaint charging Plaintiff with six counts related to the November 19, 2010 incident. (*See* Doc. 7, ¶ 44; *see also* Doc. 3-3.) In the affidavit of probable cause, Corporal Gamez recounted the events giving rise to the stop, and stated that "[t]he defendant was identified by his International ID as Ever URIVE [sic] PEREZ, DOB: [redacted as submitted]." (Doc. 3-3, p. 6 of 6.)

On December 1, 2010, Magisterial District Judge Gregory D. Johnson issued a summons for Plaintiff to appear for a preliminary hearing scheduled for

February 7, 2011. (Doc. 7, ¶¶ 49, 53.) The court sent two copies of the summons to Plaintiff's address, the first by certified mail, which was accepted by an individual whom Plaintiff fails to identify in his complaint (*Id.* at ¶ 51), and the second by regular mail, which was not returned as undeliverable (*Id.* at ¶ 52). Nevertheless, Plaintiff contends he did not receive either copy of the summons, and consequently, failed to appear for the preliminary hearing. (*Id.* at ¶¶ 50, 54.)

Due to Plaintiff's failure to appear, Magisterial District Judge Johnson transferred the case to the Dauphin County Court of Common Pleas and requested a bench warrant be issued on February 9, 2011. (*Id.* at ¶ 55.) On February 11, 2011, Dauphin County Court of Common Pleas Judge Andrew Dowling issued a bench warrant for Plaintiff's arrest, which ordered that "the Sheriff of Dauphin County, or any other police officer . . . convey and deliver [Plaintiff] . . . into the custody of the [Dauphin County] Court [of Common Pleas]," but instructed that, if the court was unavailable, the individual may be held at the county jail pursuant to Pennsylvania Rule of Criminal Procedure 150(A)(5)(b). (Doc. 3-4, p. 1 of 5.) The bench warrant listed the reason for its issuance as "Failure to Appear," identified Plaintiff as the individual to be seized, and was signed by Judge Dowling. (*Id.*)

On June 11, 2011, at approximately 11:00 a.m., Defendant Crone stopped Plaintiff, who was operating his burgundy minivan in the Middle District of Pennsylvania, for speeding. (Doc. 7, ¶ 60.) Plaintiff provided Defendant Crone with several documents, including his passport. (*Id.* at ¶ 62.) Upon inspecting the documents, Defendant Crone reentered his vehicle for approximately thirty minutes, and presumably discovered the outstanding bench warrant for Plaintiff's arrest. (*See id.* at ¶ 63.) Thereafter, three additional police vehicles arrived, and Defendant

Crone effectuated Plaintiff's arrest with the assistance of several other law enforcement officers, who Plaintiff identifies in his complaint as "John Does 1-6." (*Id*. at ¶ 64.) Plaintiff understood only portions of what the officers said because they spoke only English. (*Id*. at ¶ 65.) Plaintiff was transported to Dauphin County Prison, at which time he was strip-searched, fingerprinted, given a tuberculosis test, outfitted with prison clothes, and interviewed in English, during which he was able to provide answers to biographical questions. (*Id*. at ¶¶ 71, 75-77.) Plaintiff alleges he "had no idea why he was being jailed." (*Id*. at ¶ 80.) Dauphin County Deputy Sheriff Brian Hunter signed the warrant and returned it as executed to the Dauphin County Court of Common Pleas on June 15, 2011. (*Id*. at ¶ 90.)

Following a series of continuances, which form the basis of a motion to dismiss filed by a separate group of defendants, Plaintiff appeared at a hearing before Judge Curcillo on October 18, 2011, at which time Corporal Gamez compared a photograph of the individual taken at Harrisburg Hospital on the night of the incident to Plaintiff and realized that Plaintiff was not the individual whom he pulled over on November 19, 2010. (*Id.* at ¶ 107; Doc. 3-7, p. 2 of 4.) The county prosecutor agreed to amend the criminal information to reflect the name of the individual who was actually driving, Jose, and release Plaintiff. (*Id.* at p. 2 of 4.) Plaintiff was released from custody on October 18, 2011. (Doc. 7, ¶ 108.)

### B. **Procedural History**

Plaintiff initiated this action on June 10, 2013, and filed his first amended complaint on June 28, 2013. (Doc. 7.) In his complaint, Plaintiff asserted several constitutional claims, pursuant to 42 U.S.C. § 1983, and named ten defendants, including two police officers, a county sheriff, three state judges, a

district court administrator, and three public defenders, in addition to twelve unidentified "Jane" or "John" Doe individuals. (*Id*.) Relevant to the instant motion, Plaintiff claimed that Defendant Crone's arresting Plaintiff constituted an unlawful seizure in violation of the Fourth and Fourteenth Amendments (*Id*. at ¶¶ 135-143), and constituted false arrest and false imprisonment under Pennsylvania state law (*Id*. at ¶¶ 149-152).

On September 30, 2013, Defendant Crone filed a motion to dismiss the claims asserted against him. (Doc. 33.) As the basis for his motion, Defendant Crone contends that Plaintiff failed to state a claim upon which relief can be granted (*Id*.), arguing in support that, because Defendant Crone arrested Plaintiff pursuant to a facially valid warrant, he cannot be held liable for committing an unlawful seizure as a matter of law. (*Id*. at ¶ 28.) Alternatively, Defendant Crone argues that he properly relied on a dispatch report that a valid warrant for Plaintiff's arrest existed and did not himself see the warrant, and thus cannot be held liable for committing a seizure on an invalid warrant as a matter of law. (*Id*. at ¶ 36.) Lastly, Defendant Crone argues that he is entitled to qualified immunity. (*Id*. at ¶ 38.)

On October 25, 2013, Plaintiff filed a response, in which he argued that the warrant pursuant to which Defendant Crone effectuated Plaintiff's arrest "was issued on less than probable cause and facially invalid." (Doc. 43, p. 2 of 7.) Therefore, Plaintiff reasoned that, because Corporal Gamez identified Plaintiff as the driver he stopped on November 19, 2010, with a "reckless disregard for the truth," any officer participating in an arrest arising therefrom was not entitled to rely on the warrant. (*See id.*) Defendant Crone filed an untimely reply brief on November 15, 2013. Thus, the matter is ripe for consideration.

6

## II. <u>Legal Standard</u>

Defendant Crone's motion challenges Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a), which requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S 41, 47 (1957)). While a complaint need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, when adjudicating a motion to dismiss for failure to state a claim, the court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *See Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that district courts "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

Ultimately, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Iqbal*, 556 U.S. at 679; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The "plausibility standard" requires "more than a sheer possibility" that a defendant is liable for the alleged misconduct. *Reuben*, 500 F. App'x at 104 (citing *Iqbal*, 556 U.S. at 678). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Steedley v. McBride*, 446 F. App'x 424, 425 (3d Cir. 2011) (citing *Fowler*, 578 F.3d at 211). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555).

To evaluate whether allegations in a complaint survive a Rule 12(b)(6) motion, the district court must initially "take note of the elements a plaintiff must plead to state a claim." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Next, the court should identify allegations that "are no more than conclusions" and thus, "not entitled to the assumption of truth." *Id.* Lastly, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

"A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 588 n.8). Rather, Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable

8

expectation that discovery will reveal evidence of the necessary element[s]." *Id*. at 234.

### III. Discussion

As Plaintiff brings his claims pursuant to Section 1983, the court will briefly address the law as it pertains to that statute. Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law committed by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To establish a claim under this section, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Plaintiff claims that Defendant Crone violated his Fourth Amendment right to be free from unreasonable seizures, which includes the right to be free from

false arrest and false imprisonment. A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (2000). A seizure occurs even when an unintended person is the object of detention, so long as the means of detention are intentionally applied to that person. *Id.* (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989).

An arresting officer violates a person's Fourth Amendment rights when the officer arrests a person without probable cause. *See Hanks v. Cnty. of Delaware*, 518 F. Supp. 2d 642, 648 (E.D. Pa. 2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)); *see also Pierson v. Ray*, 386 U.S. 547, 556-57 (1967) (acknowledging that a plaintiff may recover civil damages for false arrest under Section 1983 if the plaintiff is able to establish the arresting officers lacked good faith and probable cause). When an officer does make an arrest without probable cause, the arrestee may also assert a Section 1983 false imprisonment claim based on any subsequent detention resulting from that arrest. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).[4] Probable cause exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

---

[4] A Section 1983 false imprisonment claim arising from an arrest without probable cause is grounded in the Fourth Amendment guarantee against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). The law of the state where the arrest occurs controls whether the arrest is valid. *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *Ker v. California*, 374 U.S. 23, 37 (1963)). A claim for false arrest under Pennsylvania law is coextensive with one made under Section 1983. *Kokinda v. Breiner*, 557 F. Supp. 2d 581, 592-93 (M.D. Pa. 2008). To state a claim for false imprisonment, a plaintiff must establish that he was detained, and that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 2012).

Probable cause for arrest generally exists when a defendant is named in a facially valid bench warrant, and any Fourth Amendment argument arising out of the arrest is without merit even if the bench warrant later turns out to be invalid. *United States v. Smith*, 468 F.2d 381 (3d Cir. 1972); *United States v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (maintaining that a bench warrant is equivalent to a judicial determination of probable cause); *Carter v. Balt. Cnty.*, 95 F. App'x 471, 479 (4th Cir. 2004) (finding that once an arresting officer ascertained that the plaintiff was the individual listed on the bench warrant, the officer had "probable cause (and indeed the duty) to serve the warrant and take [the plaintiff] into custody"). This is true so long as a reasonably well-trained officer would not have known that the arrest was illegal despite there being a bench warrant. *See United States v. Leon*, 468 U.S. 897, 922 n.3 (1984) (holding that physical evidence seized pursuant to a facially valid warrant is admissible, even though a reviewing court has subsequently determined that the warrant was defective).[5]

Furthermore, officers are generally entitled to rely upon a National Criminal Information Center bulletin and to assume the reported outstanding warrant is valid. *See Whitely v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971); *Capone v. Marinelli*, 868 F.2d 102, 105-06 (3d Cir. 1989). This does not mean, of course, that an officer may arrest an individual whom he knows is not the subject of the warrant or indefinitely detain an arrestee without attempting to resolve an apparent issue of identity. *Garcia v. Cnty. of Bucks, Pa.*, 155 F. Supp. 2d 259, 266 (E.D Pa. 2001) (citing *Kennell v. Gates*, 215 F.3d 825, 829-30 (8th Cir. 2000)

---

[5] Although *Leon* arose in the context of a search warrant, the principles enunciated apply with equal force to arrest warrants, because both implicate significant Fourth Amendment concerns. *See Malley v. Briggs*, 475 U.S. 335, 344 n.6 (1986).

11

(distinguishing officer with apparent knowledge that the plaintiff was detained mistakenly from those who merely failed to investigate a claim of mistaken identity)). Nevertheless, an officer making an arrest pursuant to a warrant generally is not required to investigate the arrestee's claim of innocence or mistaken identity. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *Kennell*, 215 F.3d at 828 (holding that an unreasonable refusal to investigate a claim of mistaken identity by a person arrested and detained pursuant to a facially valid warrant does not amount to a constitutional violation).

There is no doubt that Defendant Crone acted under color of state law when he arrested Plaintiff. Nor is there doubt that Plaintiff's arrest pursuant to the bench warrant constituted a seizure for Fourth Amendment purposes. Nevertheless, the complaint does not establish a prima facie claim against Defendant Crone.

Even in his response to Defendant Crone's motion to dismiss, Plaintiff argues that:

> [Corporal] Gamez made false statements, namely that Plaintiff was the drunk driver he arrested on November 19[, which were] made with reckless disregard for the truth because any reasonably prudent officer would have recognized that the drunk driver he had just stopped was not [the] same person depicted in the identification that the driver presented during the traffic stop.

(Doc. 43, p. 2 of 7.) Thus, Plaintiff's claim against Defendant Crone appears to be based on the actions of Corporal Gamez in preparing the affidavit of probable cause supporting the issuance of the summons. Plaintiff does not aver that Defendant Crone played a role in obtaining the bench warrant from Judge Dowling. Indeed, Defendant Crone first appears in the story after the bench warrant is issued. Therefore, Defendant Crone would have no idea (and he was not required to inquire)

12

whether there was an adequate factual foundation for the warrant. *Baker*, 443 U.S. at 145-46; *see also United States v. Hensley*, 469 U.S. 221, 231(1985) (quoting *United States v. Robinson*, 536 F.2d 1298, 1300 (1976)) ("[E]ffective law enforcement cannot be conducted unless police officers can act on the directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."). Moreover, Defendant Crone was entitled to rely upon information relayed to him that a valid warrant existed. *See Capone*, 868 F.2d at 105 ("Given that the NCIC bulletin expressly stated that a warrant existed for the arrest of [the plaintiff] . . . [the defendant-officer]'s reliance upon the bulletin cannot be said to have been unreasonable."). Lastly, Plaintiff's complaint fails to allege either that Plaintiff put Defendant Crone on notice that he was not the individual arrested on November 19, 2010, or that Defendant Crone possessed or had access to information that would make his arresting Plaintiff unreasonable. *Cf. Baker*, 443 U.S. at 145 (stating that "[W]e may even assume, *arguendo*, that, depending on what procedures the state affords defendants following arrest and prior to actual trial, mere detention pursuant to a a valid warrant *but in the face of repeated protests of innocence* will after the lapse of a certain amount of time deprive the accused of 'liberty without due process of law'" (emphasis supplied)); *Berg v. Cnty of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (remanding for district court to determine the reasonableness of the arrest pursuant to a warrant naming the plaintiff due to a clerical error).

Without deciding the issue, it may be possible for Plaintiff to establish that the warrant was invalid; however, the warrant's validity is not the issue before

this court as it pertains to Defendant Crone's motion. To state a valid claim under the Fourth Amendment against Defendant Crone, Plaintiff would need to allege that Defendant Crone did not rely in good faith on the facially valid warrant. He has not done so. Accordingly, Plaintiff has failed to establish, for federal pleading purposes, that Defendant Crone's actions in effectuating Plaintiff's seizure were unreasonable.[6]

## IV. Conclusion

Plaintiff has failed to properly show, for federal pleading standards, that the bench warrant for Plaintiff's arrest was facially invalid. Moreover, even assuming the summons was issued upon a recklessly false affidavit, Plaintiff has not pleaded a basis for finding Defendant Crone's reliance thereon was unreasonable. For these reasons, the court will grant Defendant Crone's motion to dismiss in its entirety, and dismiss Counts I and III as against him.

An appropriate order will issue.

s/Sylvia H. Rambo<br>
SYLVIA H. RAMBO<br>
United States District Judge

Dated: November 25, 2013.

---

[6] Moreover, the doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Bergdoll v. City of York*, 515 F. App'x 165, 169 n.2 (3d Cir. 2013). Given that the NCIC bulletin expressly stated that a warrant existed for Plaintiff's arrest, Defendant Crone's reliance upon the bulletin cannot be said to have been unreasonable. Therefore, the protection of qualified immunity from both Section 1983 and state law tort claims extends to Defendant Crone. *See Capone*, 868 F.2d at 105